Number 09-4106, Mr. Feinberg and Mr. Bresnik. Good morning. May it please the Court, Jonathan Feinberg for the appellant, Robert Holmes. Judge Amko, I respectfully request three minutes for rebuttal. That's fine. Because of the charges that were at issue in this case and because of the manner in which the district court instructed the jury on those charges with the agreement of the parties, this is this unique and extraordinary case where a strategy that was employed by a trial lawyer who, by all accounts, has a reputation for being an excellent trial lawyer. He's appeared before, so I would agree with that. He employed a strategy that in many cases would correctly be perceived as utterly brilliant, but in this case — That's what the district court thought. That's correct, but in this case — The district judge said superb wasn't good enough. Exquisite. Exquisite is the word. I'm aware — It's a standard of review. A standard of review. Well, as to the adjectives, I'll — A standard of review on the decision. Well, my contention here, and I think there's strong support for it — Answer the question. What's the standard of review? I apologize, Your Honor. I misinterpreted your statement. The standard of review is de novo on the legal question as to whether counsel's conduct was, as we contend, subject to a chronic analysis or was ineffective under Strickland. That's my position on the standard of review. Okay, that's legal, but if it's Strickland, you have to show prejudice, right? Fully aware of that, yes. And in this case, I'm just working backwards, then we'll get back to what counsel did at trial. Based on the statements that were made by Mr. Holmes to Agent Tropea, that he was the gun, he was one of the guns with regard to this drug trafficking group, hasn't he, in effect, convicted himself of count one? I would suggest to you, Your Honor, that the government disagrees. And the reason that the government disagrees is that they brought in these three cooperating witnesses. Very risky move. And they would not have done so if they believed. Well, it could be they were gilding the lily. I mean, who knows? It's possible. And that gets into government trial strategy, which is a separate issue. But ultimately, I would suggest that you can read a lot into that. The fact that they brought in these witnesses was an acknowledgement that the statement didn't get them there. And we've characterized in our brief that the statement, that the way that the district court read it and the way that the government characterized it is an overstatement of the scope of what the statement says. And, in fact, there are certain things that Mr. Holmes talks about in the written statement. For example, they thought that I was the gun, referring to other members of this group, the Eiffel Street group, when, in fact, he was not admitting at all that he was, in fact. Well, did you carry a gun? Yeah. A host of other places here, he was, he said that he was the gun for the group. When he got out of prison, he was. I fully acknowledge that. I fully acknowledge that the statement was problematic, that if confronted with this case at trial, it's the first thing I would have considered as being very problematic for the case. However, there was a very creative way to get around the problems of the statement. And, in fact, trial counsel did that. Something I should do, I should step back and talk about one of the claims that was pled and litigated in the district court but not included in the appeal. One of the claims we asserted was that trial counsel had introduced, through his cross-examination, evidence that was otherwise inadmissible, specifically evidence that Mr. Holmes had a previous federal conviction. When I first got this case at habeas, I pled that claim, that all of a sudden this prior conviction comes in when there was no basis for it coming in before trial counsel's cross-examination, which opened the door to it. Trial counsel then said at the evidentiary hearing at habeas in front of Judge Dalzell, I did that for a reason. I wanted to bring that prior conviction out because it allowed me to make the argument to the jury, which you did, that the prior conviction taught Mr. Holmes the game of cooperation. It taught him how you can reduce time on your sentence. The argument that trial counsel then made is that the statement was an embellishment, a very creative argument, and because of trial counsel's testimony on that issue, that's why I didn't raise this cross-examination issue in the court of appeals here, because that seemed like not only a reasonable strategy, it seemed like excellent strategy for dealing with a confession, characterizing it as an over-embellishment, an overstatement, of exactly what Mr. Holmes' involvement was in this case. So although, Your Honor, I acknowledge that the statement is problematic, there were ways to get around it, and ultimately on the question of prejudice in the Strickland context, I cite Judge McKee's language in the German decision. This is not a scrutinizing analysis. Was there a reasonable probability? It's not the most stringent analysis in determining whether there's a reasonable probability that but for counsel's conduct there would have been a different result. Isn't the thing that you really have to show is somehow we would say that chronic applies, which is really tough sledding, because if Strickland applies, I come back to, I think you've got a real, you're marching up San Juan Hill on prejudice. Well, I disagree with the characterization based on, you know, for the exact reasons that I outlined as to how the statement can be confronted. But, yes, I would agree chronic makes it a much easier case, a much cleaner case for the appellant for the position we're in, and that's why we raise the issue, and I think it's appropriate. Under the Ninth Circuit's decision in Swanson, the Ninth Circuit says if you concede all of the issues that are presented to the jury in the case, that's a denial of counsel. Counsel hasn't contested the evidence at all. No matter how skilled counsel's collateral strategy may be. No, in this case, with respect to, for example, the rest of the trial and the three witnesses, I mean, I thought the idea behind Swanson and chronic is that, in effect, he got no representation. Here what you've got is counsel doing a pretty, some heavy lifting at trial, and then at the closing made statements that appeared to give away the candy store, because maybe counsel and maybe the court perceived that, oh, okay, he'll agree to something lesser for purposes of getting credibility on the greater one. The trouble is that we have the flip of that in this case. Exactly. This is the opposite of the classic case where counsel employs the strategy. For example, possession. And maybe counsel and the court didn't realize that. But otherwise, it looked from the transcripts that counsel really, he was his usual self. Well, there are two points there. The first is that with regard to chronic and Swanson's application of chronic, I don't think there's any suggestion that counsel essentially has to stand up and say, you got us, my client's guilty, there's nothing I can do. I think Swanson's application of chronic suggests that if the practical effect, based on the context of the case and the context of the argument, is that there is no defense, then that's a denial of counsel. And that's exactly what we would have. But why is that the practical effect when the court tells the jury in response to a question, yes, you can return what would seem to be a legally inconsistent verdict. And why? Because the Supreme Court of the United States says you can do it. I mean, this guy's sitting there in an impossible political situation, and you say he's got a chronic situation, no counsel, and the judge who's sitting there says he's exquisite. I think that charge was utterly incomprehensible to the jury, because the jury had just been told that if you have proof beyond a reasonable doubt that he is guilty, you have to find him guilty. But we do know that juries do come back with inconsistent verdicts. No question. And we know that happens, and we know that that's not a basis for appellate review. United States v. Powell tells us that. But that doesn't mean that counsel's strategy, which in essence asks for jury nullification, it doesn't mean that that's a correct strategy. It doesn't mean that counsel has provided his client with a defense. It doesn't mean it's correct, but who are we to say that it's not correct? I can understand why he did what he did. He thought, I'm in an impossible situation here. I can't hit a home run leading to acquittal. I understand that. And he said maybe the best I can hope for is a conviction on the lesser of two. That is a reasonable conclusion for counsel to reach until the point when he sees the court's charge and agrees to the charge that says you can't be convicted on count 120 unless you're convicted of count one. But it's inherent that counsel is playing for the fact that notwithstanding the charge, the jury is going to come in with an inconsistent verdict. And that, in fact, does happen. It does happen, but I have yet to see a case the government doesn't cite any case where specifically requesting an inconsistent verdict in a situation like this, which walked the defendant into a life sentence, the equivalent of a life sentence, 400 months in prison. Mr. Feinberg, you do acknowledge that his concession was strategic and it was part of trial strategy. I do. And I can't fight that because he said at the evidentiary hearing, this is exactly what I wanted to do, it's exactly what I hope it was. Based on that acknowledgment, how can it either be chronic or how can it be deficient representation? Because I would suggest that the strategy, the way I'm interpreting it and the way I'm asking the court to interpret the strategy, the strategy is to raise no defense. So it cannot, I don't think the court can find, I don't think strickling or chronic would permit the court to find that the umbrella of strategic actions or counsel's strategy protects counsel's conduct when the strategy, so to speak, was I'm not going to raise a defense.  I apologize, Judge Feinberg. With chronic, I understand you're in a situation where if there's no counsel, then you're in good shape. But if you're in strickling, how can you say that there was prejudice here in view of the strength of the government's case? Because of the way in which it could have been argued. Counsel, I will acknowledge, in fact, if you go through the closing argument, you read the first part and counsel's first words to the jury are, in fact, if I can just read to the court from the appendix page 951, counsel starts off his argument by essentially presenting the jury with two choices. He's talking about the standard of proof at page 951 and he says, the question is the standard of proof that you folks are going to have to apply to determine whether or not you should convict my client of count one and count 120 or just count 120. So he's starting from the very beginning, presenting the jury with two options. Number one, convict him on both, or number two, convict him on just the counts. The government fights all of them. But, I mean, a fair reading of that, he also gave them three, which doesn't convict him on either. And I would suggest to you, Your Honor, I disagree. I think the record actually belies that point. And I would point you specifically, we argue in our brief, there's the portion of trouble. I certainly don't think the closing statement belies that point. The very last statement that he makes, and I see my time has expired. You can answer that. If at page 978 to 979, the very last words that counsel says to the jury, you should find him not guilty of the conspiracy in count one and if you're going to convict, convict on count 120. If. If. There was a full stop after you're going to, don't convict him on count one. If he was really fighting off count 120, he would have said, don't convict him on count one and 120, but if you're going to do this. He had already said that. Let me ask you a question, if I could, on count 120. Isn't count 120 essentially the charge of possessing a gun and further of the drug conspiracy on a specific date on which they were involved in the shooting? It's conspiracy to possess a gun on that specific date. Right. Okay. I see my time has expired. I can finish up on rebuttal. That's fine. Thank you very much. Mr. Bresnik. Good morning, Your Honors. May it please the Court. My name is Michael Bresnik. I represent the government in this appeal. Your Honor. In this case, is it logically conceivable that you could have a compromise verdict if you give away 120, count 120, that you could somehow give away 120 but still be held not guilty on count one? Your Honor is asking me to assume that trial counsel in this instance did in fact concede count 120? Yes. All right. In that instance, Your Honor, I think the answer to your question is still no, given the district court's instructions to the jury. To be fair to appellant, of course, the district court did instruct the jury in his original instructions on count 120 that in order to convict on count 120, you have to find that he was part of the conspiracy on count one. And if that's all the district court said on that matter, perhaps the appellant would have a point. But, of course, that's not all the district court said. He continued in his instructions by elaborating on what it means to be a member of the conspiracy and whether the defendant in fact participated in the conspiracy. And by doing that, he incorporated his count one instructions on conspiracy into his count 120 instructions. You know, when the Powell case came out, I read it, and I thought to myself the real basis for this opinion is the recognition by the Supreme Court that no matter what judges tell juries, juries are going to return inconsistent verdicts. And we're not going to allow the defendant then to run with that. Because we won't know whose ox is being gored. Yeah, because we want to, and that's right, because maybe if there were another remedy, although you obviously couldn't do it, would be to convert the not guilty to guilty, which they couldn't do. I understand that. But I have to tell you this. I never saw a case before in which a defendant actually played, if I can use that word, the Powell. I mean, this is sort of an unusual approach. It surely is, Your Honor. A motion to acquit on what the conviction was on the ground. Well, look, they acquitted him on the aspect. You won't get any argument about that from me, Your Honor. It certainly was an unusual defense, one that I hadn't seen before. And I think if this Court is familiar with Mr. Warren, and you say you are, it was, I think in this case, a brilliant strategy. And as the District Court noted during the evidence you're hearing,  But in fairness to the defendant's attorney, apparently the judge expected a guilty verdict in about the time he was going to have a cup of coffee. As did we all. In a number of hours. As did we all, Your Honor. I was part of the trial team. I expected it. I mean, the jury here, obviously, I mean, they asked two good questions. They were good questions, Your Honor. In fact, I mean, basically what they're saying is it's making no sense. Well, that's right, Your Honor. And if I can just go back to your original question, of course the District Court didn't just incorporate his count one conspiracy instructions into his count 120 instructions. If there's still any doubt remaining as to whether or not the jury could have convicted as to count 120 without convicting as to count one, the District Court cleared it up. When he answered the jury's question during deliberation, they asked that specific question. Now, whatever reasoning, I mean, the appellant chides the government for raising this now in support of its argument, but whatever reason was behind the District Court's theory and the government's theory and all parties at the moment, the fact is the jury was instructed at that time that they could acquit on count one and convict on count 120. This simply is not a chronic case, Your Honor, among other reasons that the defendant, rather the trial counsel. How would you distinguish the Swanson case from this? Well, Your Honor, if I could just quote from Swanson, in that case the trial counsel said, in this case I don't think it really overall comes to the level of raising reasonable  He also told the jurors that if they found the defendant guilty, they should not ever look back and agonize whether they had done the right thing. This doesn't even come remotely close to what happened in Swanson or any of the other cases that the government cites in its brief. In fact, what the appellant here is asking this court to do is to be the first court in the country to hold that the conduct complained of here amounts to a concession of guilt. Now, of course, there's nothing wrong with being first in any matter if the facts require it, but this is not that case, Your Honor. This is a far cry from anything that trial counsel did in any of the sister circuits that have discussed this issue. The appellant refers to the comment, if you're going to convict, convict on count 120. Well, even appellant would agree, Your Honor, that you have to consider that statement in the context of the entirety of the trial counsel's statements during the closing argument and indeed the whole trial. I don't think there's anybody who sat through that trial, and as I said, Your Honor, I was part of the government's trial team. As I read this, what you just said was true. The attorney never actually said convict on 120. Precisely. It was always in the event that there's a conviction. And that's the government's point, Your Honor, that if you don't agree with me. Okay, convict on 120. That's precisely right, Your Honor. But I thought he argued still that there should be a total acquittal, although he didn't hammer the point. As trial counsel explained during the evidentiary hearing on the 2255 motion, he put forth what, I'm not sure if he used the word or if it was simply me in my brief, but a tempered defense to count 120, as opposed to the more vigorous and spirited defense that he offered to count 1. And that, of course, was a strategic decision, given the more serious sentencing consequences that were attended. What was the difference? Well, for count 1, there was a possible, I think it was a guideline sentence of life, given the murder that took place of Gray Lynn Craig. And in the count 120, there was a statutory maximum of 20 years. You can finish that. Well, I guess that answers the question. Okay. The one thing, it is true that the counsel said on pages 973 to 979, and if you're going to convict him of count 20, but just prior to that he said, now, ladies and gentlemen, there are three unequivocal facts. Those are the three unequivocal facts. They are not contradicted by statements given to Agent Tropea. They are not contradicted by prior sworn testimony, and they are sufficient to support a conviction on count 120. I mean, as I said to your opposing counsel, it's like that is giving away the candy store. Well, that is a curious statement, Your Honor. I'm not sure. I know Appellant didn't raise that in his brief. I did, in fact, notice it. I would have been curious to actually get the audio of that transcript, but that is what's written there. I think, Your Honor, if you look at it. It's almost like what happened here is he could see that this was a really tough case. He surely did. It wasn't plead out. He went to trial, and he's saying, you know what? I'm just going to go up and swing for the fences, and if I strike out, I strike out, but that's the best I can do because a single, a double, or a triple ain't going to work. And that exactly goes into the, if we're talking about Strickland now as opposed to Cronic, if we're talking about the trial strategy here, again, the Appellant is asking this Court to find that the district court was clearly erroneous because this was a factual finding that the district court found that he did not concede guilt as to Count 120. He's asking this Court to find that that finding was clearly erroneous. The statement I just read looks like a concession of guilt on 120. Well, Your Honor, I think if you look at it in the context of the entirety of his statements, I would disagree because if you look at the statements, trial counsel also did say he put up, among other things, he challenged the government's cooperating witnesses as being, well, first of all, you can't believe them because they're cooperating witnesses and they have much to gain. When I look at it in context, I'm not sure I agree with you. He got out there even though I do agree with the prosecutor. Even though he didn't get out of the car, that's not a defense. Conspiracy is an agreement to do it, but he went out there. He did go out there. That's the essence or the gist of Count 120. Well, the gist of the Count 120. I'm not sure I can write this stuff any better. Well, Your Honor, the comment that that's the gist of Count 120 I think applies to everything Your Honor just said, not just the fact that he did go out there. And he was right, Your Honor. It wasn't a defense that he didn't get out of the car. That simply wasn't a defense. The essence of the conspiracy is the agreement. And that trial counsel attacked with great gusto, I believe, because what he did was he pointed to Kareem Clouden. He was one of the shooters, actually, that took part in the murder along with Jughead and Shakey, Christopher Smith and Christopher Williams. Even Kareem Clouden testified he didn't think it was going to result in a murder. He thought things went too far. So what trial counsel in this instance did was he said, ladies and gentlemen of the jury, even the government's cooperating witness, the one of the shooters, didn't think there was going to be a murder that night. So how can you find that my client participated in any such agreement? No agreement, no conspiracy. That was the essence of his attacking of Count 120, I find. And that was an interesting defense. Now, as far as the statement itself goes, I do believe that he put up a defense to the statement. I read appellant's counsel's suggestions or suggested defenses to various comments in the statement. I found them amusing, quite frankly. I think if trial counsel had gotten up and said during his closing that just because he admitted that he was a gun, he didn't admit that he was a gun as part of the I-block crew, I think if that had happened, Your Honors, I think trial counsel would have been mocked mercilessly during his closing. But instead what he did was he used that statement, as Mr. Feinberg alluded to, he used that statement as a sword. He said, well, the defendant was used to the culture of cooperation. He thought that he could make himself appear more attractive to the government, so he wanted to embellish his role. So, yes, he said he was a gun. He said he went to Mike Scully's house where everybody was loading the bullets and wiping them down and we're going to go tear up the block. He said all that, but he didn't really mean it or he wasn't really a part of it because he was trying to make himself appear more valuable. If we find that these statements were a complete concession as to both counts, can you still win under chronic? Under chronic, no. No, I think that would be fatal under chronic, yes, because under chronic you have to find that the trial counsel entirely failed to subject the prosecution's case to meaningful adversarial testing and if Your Honor finds that he conceded guilt as to everything, well, you know, that does sound like a chronic case for sure. Of course, I don't believe that happened. I believe he contested guilt as to 120 as well as count one if you look at the statements that he made. Now, if we can just, unless if Your Honor is interested. I'm sorry, he contested 120? No, well, he did contest 120, but I meant to say he contested count one with a spirit and vigor, I do believe. Okay. I might have said 120, Your Honor. I apologize if I did. Now, if we look at the Strickland test, Your Honor, and I know Your Honor has talked about the prejudice prong, I don't see any way how he gets past the prejudice prong of Strickland given everything that came in during the trial, the government's cooperating witnesses, but most importantly this statement, this statement as I believe my co-trial counsel said was the elephant in the room. Judge Dalziel found it was the elephant in the room. It's hard to get around this statement, Your Honor, and I think trial counsel did the best he could. Well, you either lose as a matter of law or you don't lose at all. You either lose on a legal basis or counsel abandons them. Well, maybe that's not what you're talking about. Well, I'm not sure that's right, Your Honor. If he doesn't win on chronic, he can't win on Strickland because there's not enough prejudice. And he can't win under chronic, pardon me, Your Honor, and he can't win under chronic unless you find that the district court was clearly erroneous in finding that the trial counsel did not concede guilt as to count 120. So we have a deferential standard of review under chronic? Insofar as the factual basis goes, Your Honor, the factual findings. The legal findings, of course, are reviewed. It's a plenary review. I believe I have nothing else to add unless Your Honor has any more questions for me. I'll rest in my brief. I have no questions. Thank you. Thank you, Your Honor. You get an exquisite opinion. I look forward to it. Thank you, Your Honor. Let's make sure somebody else writes it. I'd actually like to start with the standard of review. I would suggest this is not a deferential standard of review, reviewing a factual finding. The court has the closing argument before it. It can read it. It's a mixed question of law and fact. And, in fact, Judge Ambrose, in questioning my opposing counsel, pointed out a number of sections of the transcript which are stronger concessions than I'll acknowledge I put in my brief. In fact, rereading the closing argument just over the past couple of days, I noticed a couple of points, including the one that Judge Ambrose made, where counsel had said, specifically referring to page 978 of the appendix. When you put yourself in Warren's shoes, as I said before, it looks like, I mean, you're at trial and you're saying to yourself, my God, why didn't we just plead out? I mean, this is ridiculous. I think he did say that, actually. And so he's really, you can call it whatever sport term you want, you know, the going for the home run, the Hail Mary pass, whatever he could, because he could see that everything was stacked against him. And I think that is accurate. However, I would suggest that the result, the path that he chose was improper. And I'll be honest, I've spoken to Mr. Warren. He and I are good friends. I've spoken to him about this case a number of times, and we've had very interesting discussions about what he could have done. And what he could have done, I think actually is pretty obvious, so obvious, in fact, that I didn't include it in my brief. He had great arguments on count one, particularly the statement by Alan Kane, who was the star witness the government called. Mr. Kane had said in a previous trial, Bob Holmes had nothing to do with us. That was terrific impeachment. In fact, Mr. Warren characterized it in his testimony as kind of a once-in-a-lifetime piece of impeachment, which undermines the government's case. That was a very solid defense to count one. And, in fact, it allows you to make the argument that whatever the statement says, the statement is not corroborated by what the witness testimony says. That defense was made? Yes. That defense was made. So doesn't that ipso facto take you out of chronic? No, it doesn't. Because if that defense is made, the next logical argument is to use the court's instructions and say, count one has not been established. You can't be found guilty on count 120 if you're also guilty of count one. So, therefore, trial counsel very well could have said, look, I'm not going to argue to you about the facts of what happened on 58th and Willis. I'm not going to argue to you about count 120. All I'm going to tell you is that they can't prove my client guilty on count one. But if you were the defense attorney, you know, it's hard. If you're not at the trial, I was a trial judge a long time, state trial judge. But if you're not there, it's hard to get the feel of it. But he's got to think there is no way my client is walking here. I mean, he had to think that. That's what I guess he figured. Well, my time is about to expire, Judge, if I can just add. Go ahead. Respond to that question. There's no question that this was a difficult case for trial counsel. Defense attorneys in federal cases are often faced with the issue, how do you deal with very difficult facts when you may be arguing, for example, in a RICO case, what essentially are jurisdictional issues. Yeah, this was a homicide, but it's not a RICO homicide. That's the argument, difficult as it may be for a jury to swallow, that's the argument that trial counsel had. There's no drug conspiracy here. With no drug conspiracy following the district court's charge, unless you commit that conspiracy, there's no conspiracy on count 120. That was the defense that could and, in all honesty, should have been pursued. And for that reason, I think habeas relief is justified. And I'd ask the court to reverse. Thank you very much. And I thank both counsel for very well-presented arguments. We'll take the matter under advisement and take a five-minute recess.